IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOM SAALEEPHIW,<br><br>                  Plaintiff,<br><br>       vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>                  Defendant.<br>_____ / | CASE NO. CV-F-04-6293 REC LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc.12 ) |

Plaintiff Lom Saaleephiw ("claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security benefits under the Social Security Act, Title XVI ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on September 22, 2004 and her opening brief on May 20, 2005. The Commissioner filed her opposition to the appeal on July 21, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for supplemental security income on February 23, 1998. (Administrative Record "AR" 58-60.) She alleges a disability onset of January 1, 1996 due to

headaches, depression, anger, hearing voices, low back pain, nightmares, poor concentration, energy level and abdominal pain. (AR 68.) The application was denied initially and upon reconsideration. (AR 45-48, 51-54.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on June 3, 1999. (AR 158-164.) ON April 19, 2001, the Appeals Council remanded the case for further administrative proceedings. (AR 188-190.) After further hearing, the ALJ found plaintiff not disabled in an opinion on February 26, 2003. (AR 18-26.)  The Appeals Council denied review. (AR 7-9.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant testified she was born in Laos, Cambodia on October 2, 1952. (AR 276.) She does not have any past relevant work.

## Medical History

The pertinent medical history is summarized as follows.

On February 14, 1998, claimant saw Orlando Collado, M.D., for nightmares, inability to sleep, headaches, depression, and anger. (AR 94.) Claimant's speech was spontaneous, relevant and coherent. (AR 94.) She was diagnosed with depression, anxiety. (AR 95.)

On April 3, 1998, state agency physician, Archimedes Garcia, M.D., completed the Mental Residual Functional Capacity Assessment form. (AR 109.) He opined that claimant is moderately limited in the ability to understand and remember detailed instructions, and the ability to carry out deferred instruction, but is otherwise not significantly limited. (Ar 109.) He opined that she is capable of performing simple repetitive tasks on a sustained bases, can relate to other and can adapt to a work like setting. (AR 111.) He diagnosed her with an affective disorder and anxiety related disorder, which only slightly impaired her. (AR 113.) On May 25, 1998, Francis Enos, PhD reviewed the records and opined that claimant could remember and carry out simple instructions, work cooperatively, interact with her peer group and supervisors, do her personal planning, avoid hazards, travel and complete simple, entry level work. (AR 133.)

An October 19, 1998 treatment note from Dr. Collado reported that claimant was alert, relevant and coherent but that she has difficulty sleeping, gets angry and is afraid of people. (AR 139.) She was prescribed medication. On a follow up visit on December 19, 1998, claimant was alert, affect was fairly

1   flexible, relevant and coherent. (AR 139.) She reported sleeping better after an increase in her
2   medications. She reported nightmares and scared. She denied suicidal or homicidal ideation. On March
3   6, 1999, she reported being angry and irritable and medications have been helpful. (AR 139.) On May
4   23, 1998, claimant reported to Dr. Collado that she was depressed. (AR 140.) Her medication was
5   increased. (AR 139.) On June 23, 1998, claimant reported felling scared. She was relevant and
6   coherent. Her medication was refilled. (AR 140.) On August 18, 1998, she reported that her medication
7   helps her sleep but that she has night mares 2-3 times a week. She reported feeling less depressed. (AR
8   140.) Dr. Collado reported claimant's good compliance with medication which he found to be effective.
9   (AR 140.)

10   On April 27, 1999, Dr. Collado completed a psychiatric medical source statement. (AR 138.)
11   He opined that claimant had a fair ability to understand, remember and carry out simple one or two step
12   instructions, but poor ability to interact with others, deal with the public, maintain concentration and
13   attention in 2 hour increments and withstand the pressures of an eight hour work day. (AR 138.)

14   Claimant was seen by Binh Lee, M.D. from October 2000 to August 2002. (AR 239-246.) At
15   a January 30, 2001 assessment, by Gregory Fields, Ph.D, claimant reported trouble sleeping and
16   depression. (AR 264.) Claimant reported minimal relief from the medications she takes for depression.
17   (AR 264.) She reported that all of her children do the household chores and grocery shopping. (AR
18   265.) Dr. Fields diagnosed Dysthymic Disorder. He reported that claimant is moderately limited in
19   ability to deal with the public, supervisors and co-workers; limited in ability to maintain attention and
20   concentration for simple one and two step tasks; mildly limited in ability to withstand the stress and
21   pressed of the testing. Dr. Field's prognosis of claimant was "fair" with outpatient counseling. (AR
22   266.)

23   Claimant presented for a comprehensive psychiatric evaluation on April 22, 2002 by Larry Sutter,
24   M.D. (AR 248-255.) Claimant complained of dizziness, depression, anxiety and trouble sleeping. (AR
25   248.) She said that she was depressed because her husband dies five or six years ago and no one can
26   take care of the family. (AR 249.) She says she gets upset easily, worries about the children and there
27   is no one to help take care of the children. (AR 249.) Claimant denied homicidal or suicidal ideation
28   and denied hallucinations. (AR 249.) Dr. Sutter reported that claimant objectively looked relaxed

during the interview with good facial expression. (AR 252.) Dr. Sutter diagnosed mild depressive disorder and assigned a global functioning assessment of 65 to 70. (AR 251-252.) Dr. Sutter functionally assessed claimant as having a mild impairment dealing with coworkers, supervisors and the public; moderate impairment performing detailed and complex tasks due to the language barrier and lack of education. (AR 253.)

A consultation report by Harold Allen, LCSW, interviewed claimant on March 31, 2001. (AR 256.) Claimant complained of worry about her children since her husband's passing. She reported suicidal ideation every day. Mr. Allen reported that claimant could perform simple one step instruction in her native language but would have moderate impairment in work situations; mild limitations in dealing with co-workers, supervisors and public but unable to tolerate change. (Ar 259.)

Suzanne Stone, M.D., an internist, examined claimant on January 17, 2001. (AR 260-262.) Dr. Stone reported that claimant was not cooperative and was evasive. Claimant reported her back hurt for 3 years and she has had depression. (AR 260.) Dr. Stone's impression was mild cervical, thoracic and lumbar muscle strain without nerve root compression and chronic depression. (AR 262.) Dr. Stone did not find any physical impairment which would result in physical limitations. (AR 262.)

**Hearing Testimony**

Claimant testified that her condition has gotten worse. (AR 293.) She dislikes loud sounds. (AR 293.) She has back pain. (AR 293.) Four of her children live with her and they do the chores. (AR 294.)

Vocational Expert ("VE"), Dr. Wetzel, testified. (AR 296.) The ALJ gave the VE the hypothetical of a person 49 years of age, illiterate in English and no exertional limitations. (AR 296.) Mental restrictions include being able to understand, remember and carry out simple job instructions, ability to function independently. (AR 296.) The VE stated that a person with these limitations could perform the position of food worker of which about 24,000 positions exist and the position of hotel/motel housekeeping or office client of about 27,000 positions. (AR 296.) The VE testified that there would not be an erosion of the occupational base for the food worker for someone who cannot speak English. (AR 297.) The VE testified that if claimant had a poor ability to maintain concentration for 2 hours at a time, the limitation would impact the occupational base but would not preclude simple

work. (AR 298.) If claimant had a poor ability to concentrate, meaning that she is constantly feeling scared, the VE testified that she would not be able to do any work. (AR 299.)

**ALJ Findings**

In her February 26, 2003 decision, the ALJ characterized the "primary issue" before her as whether claimant was disabled. (AR 18.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 25-26):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §416.920(b).
3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
4. The ALJ finds the claimant's allegations and those of her friend regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. 20 CFR §416.927.
6. The claimant experiences slight restrictions of her activities of daily living and slight difficulties maintaining social functioning. She has slight to moderate deficiencies of concentration, persistence or pace, and there is no indication that she has ever had an episode of decompensation. The claimant retains the understanding and memory, sustained concentration and persistence, social interaction and adaptation skills necessary to engage in substantial gainful activity that does not require complex work.
7. The claimant has no past relevant work. 20 CFR §416.965.
8. The claimant is an 'individual closely approaching advanced age.' 20 CFR §416.963.
9. The claimant is 'unable to communicate in English.' 20 CFR §416.964.
10. The claimant has no exertional limitations. 20 CFR §416.945.
11. Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using

section 204.00 of the Medical-Vocational Guidlines as a framework for decision-making, the claimant is not disables.

12. The claimant was not under a "disability as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §416.920(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ erred by: (1) rejecting the opinion of the treating physician, (2) failed to provide due process, and (3) did not fully review the evidence.

### The ALJ's Consideration of the Treating Physician

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can

be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that plaintiff had the residual functional capacity to work at all exertional levels with some non-exertional limitations.

Claimant argues that the ALJ should have adopted Dr. Collado's limitations on claimant's mental capacity. (Opening Brief p. 3.)

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

7

A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears the burden of proving that he is disabled by presentation of "complete and detailed objective medical reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

Here, Dr. Collado, the treating source, opined that claimant had a fair ability to understand, remember and carry out simple one or two step instructions, but poor ability to interact with others, deal with the public, maintain concentration and attention in 2 hour increments and withstand the pressures of an eight hour work day. (AR 138.)

The ALJ stated her reasons for rejecting the treating source's opinion:

> "The undersigned rejects this treating source's opinion for the following reasons: it is based on properly discounted subjective complaints; there are inconsistencies between the opinion and clinical laboratory findings; the physician is advocating on the claimant's behalf; there are inconsistencies between the opinion and the treatment records; the physician's opinion has changed without evidence of a change in objective clinical findings; the opinion is unsupported, brief and/or conclusory; the opinion is expressed in a checklist without explanation of the basis of the conclusions; and the opinion is inconsistent with one previously expressed in the clinical findings. Thus, the undersigned gives less weight to this opinion as it is not consistent with the claimant's treatment records and other weighty evidence of the record." (AR 22.)

Here, the laundry list of reasons set out by the ALJ are not explained in any manner. The reasons are stated in conclusory fashion without any explanation or citation to the Record necessary for this Court to conduct an adequate review. The paragraph appears to be a form paragraph with a nearly exhaustive list of all potential reasons which could possibly support a rejection of the treating physician, but without the remotest analysis to support the reasons given.

The ALJ cannot, however, reject the opinion of a treating physician merely by stating in conclusory terms that the opinion is objectively unfounded. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater,* 157 F.3d 715 (9th Cir.1998) (citing *Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th Cir.1988)). In *Embrey,* the Court stated:

> "Here, the ALJ does not give sufficiently specific reasons for rejecting

8

> the conclusion of [Embrey's treating orthopedist] that Embrey is 'permanently disabled·····' Nor does the ALJ explain why he disagrees with Dr. Baker's conclusion that Embrey is permanently unemployable····· Instead, he merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects. This approach is inadequate." *Embrey,* 849 F.2d at 422.

Under these circumstances, the ALJ erred.

A reviewing court may evaluate an agency's decision "only on the grounds articulated by the agency." *Ceguerra v. Secretary,* 933 F.2d 735, 738 (9th Cir.1991) (When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record.)

It is not for this Court to justify the ALJ's ultimate decision by setting forth additional legal arguments, instead it is the reasoning given in the ALJ's decision that must be closely examined. The conclusory reasons given by the ALJ cannot be reviewed because they are unexplained. Thus, the ALJ stated legally insufficient reasons for rejecting the treating physician. The case must be remanded.

**Scope of Remand**

In *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) held that the Court is not automatically required to credit improperly rejected testimony as true. In *Connett,* the plaintiff appealed the Social Security Commissioner's denial of claim for disability benefits, which the district court had affirmed. The district court found that ALJ's reasons for rejecting claimant's testimony regarding her colitis and migraine headaches were legally insufficient. On appeal, the court reviewed conflicting Ninth Circuit decisions and explained, "we are not convinced that the 'crediting as true' doctrine is mandatory in the Ninth Circuit." The court stated it was not required to enter award of benefits in favor of claimant and could instead remand for reconsideration of credibility determination. *Connett,* 340 F.3d at 876 (discussing cases; remanding for reconsideration of claimant's pain testimony). "These opinions establish that we are not required to enter an award of benefits upon reversing the district court. Instead of being a mandatory rule, we have some flexibility in applying the 'crediting as true' theory. There is

no other way to reconcile *Dodrill, Bunnell, Nguyen*, and *Byrnes* with our other opinions."[1] *Id.* at 876. Thus, the Court in *Connett* held that it retains flexibility in determining the scope of remand.

In the most recent case to address this issue, *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), the Ninth Circuit agreed with the district court that the ALJ erred in discounting plaintiff's credibility and the evaluations of her treating physicians. The appellate court stated that, "Because the ALJ failed to proved legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true." The court then went through the remainder of the *Smolen* factors, determining no further issue need be resolved on remand, and awarded immediate payment of benefits.

In this case, however, the Court does not find that crediting Dr. Collado's opinion is justifiable. The ALJ stated reasons, which could be viewed as specific and legitimate, but the findings are not fully explained. Thus, the Court exercises the flexibility in remand as articulated by *Connett* to remand for further consideration.

**Other Issues Raised by Claimant**

Claimant also argues that the ALJ failed to provide due process to the claimant and that the ALJ failed to fully review the evidence.

Because the Court concludes that the ALJ's improper treatment of Dr. Collado's opinion requires a remand, the Court does not reach claimant's other challenges to the ALJ's decision. In this regard, the Court remands the case with the understanding that the Commissioner is to reassess these issues on remand should further proceedings render such assessment appropriate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (upon remand, ALJ to reconsider issue as appropriate to address purpose of remand).

---

[1] In *Dodrill*, the Ninth Circuit remanded for the ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witnesses." 12 F.3d 915, 919 (9th Cir. 1993). In *Nguyen v. Chater*, where the ALJ failed to consider the claimant's testimony with regard to his asthma, the court remanded with the specific proviso that "[i]t is not our intent ... to preclude the ALJ from reopening the hearing to receive additional evidence," including, presumably, evidence regarding the claimant's credibility. 100 F.3d 1462, 1466-67 (9th Cir.1996); *See also Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir.1995) ("We therefore remand this case to the ALJ for further findings evaluating the credibility of [the claimant's] subjective complaints...."); *Bunnell v. Barnhart,* 336 F.3d 1112, 1115-16 (9th Cir.2003) (remanding for reconsideration where, *inter alia,* ALJ "failed to provide adequate reasons for rejecting the opinion of the treating physicians" and "did not properly reject [the claimant's] subjective complaints").

# CONCLUSION

The decision of the ALJ is therefore REVERSED and the case is REMANDED for further administrative proceedings consistent with the Court's decision, including reevaluating the opinion of Dr. Collada and recontacting Dr. Collada if, in the opinion of the ALJ, clarification or further information is necessary.

These findings and recommendations are submitted to United States District Judge Robert E. Coyle pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304.  Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     September 2, 2005                /s/ Lawrence J. O'Neill**
b9ed48                                         UNITED STATES MAGISTRATE JUDGE